Aylin GAUGHAN, Plaintiff,

v.

Lee A. RUBENSTEIN, Defendant.

16 Civ. 8062 (PAE)(KHP)

United States District Court,
S.D. New York.

Signed 07/11/2017

Aylin Gaughan, New York, NY, pro se.

Stephen D. Hans, Stephen D. Hans & Associates, P.C., Long Island City, NY, for Defendant.

## OPINION & ORDER

Paul A. Engelmayer, United States District Judge

Plaintiff Aylin Gaughan, proceeding pro se, brings this action against her former employer, defendant Lee A. Rubenstein, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL"). Gaughan seeks, inter alia, unpaid wages and liquidated damages. Gaughan brings this action despite having settled these same claims with Rubenstein on January 25, 2016. She argues that the Settlement Agreement (the "Agreement") executed between her and Rubinstein is not binding under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), insofar as

the Agreement purported to resolve Gaughan's FLSA claims.

Two motions are pending. First, Gaughan seeks to amend her complaint, Dkt. 2 ("Complaint"), to add claims against Rubenstein and a new defendant, Jennifer Radwan, whom Gaughan claims jointly employed her with Rubenstein. Magistrate Judge Katharine Parker, in a Report & Recommendation to the Court, Dkt. 38 ("Report"), recommends that Gaughan's motion be granted in part and denied in part. Gaughan objects to aspects of the Report, all involving its recommendation that Gaughan not be permitted to bring certain claims against Radwan. Second, Rubenstein moves to dismiss the Complaint against him, or, alternatively, for summary judgment, on the grounds that her claims against him were resolved and now are now barred by the Agreement.

For the reasons that follow, Rubenstein's motion to dismiss is granted. And, to the extent that it is not rendered moot by that dismissal, the Court, after a *de novo* review of the objected-to aspects of the Report, adopts the Report in its entirety, and therefore grants in part, and denies in part, Gaughan's motion to amend.

## I. Background [1]

### A. Factual Background

Before the parties formed the employer-employee relationship at issue, Gaughan retained Rubenstein, an attorney, to represent her, post-judgment, in a divorce action. Complaint ¶ 22. Later, in 2013, Rubenstein hired Gaughan as a paralegal, to be paid at the agreed rate of $17.50 per hour, and the agreed overtime rate of $26.75 per hour. *Id.* ¶¶ 32, 37, 71. Gaughan claims, however, that contrary to their agreement, Rubenstein initially paid Gaughan at the rate of $3.57 per hour. *Id.* ¶ 37. In 2014, Gaughan alleges that Rubenstein increased her pay to $4.16 per hour, still well below the minimum wage. *Id.* ¶ 42. Gaughan also claims that she worked on federal holidays without compensation, *id.* ¶ 39, and that Rubenstein denied her requests for sick time and time off during certain holidays, *id.* ¶¶ 40–41.

In 2015, Rubenstein allegedly paid Gaughan at an hourly rate of $6.25, again below the minimum wage. *Id.* ¶ 44. In neither 2014 nor 2015 did Gaughan receive overtime pay. *Id.* ¶ 42, 44. Gaughan claims that, based on the rates to which the parties agree, she should have been paid a total of $78,890, *id.* ¶ 71, but that she was instead paid a total of $20,600, *id.* ¶ 73. Gaughan also alleges that, during 2014 and 2015, Rubenstein's payments to her (reflecting both wage and reimbursement of business expenses) were often untimely. *Id.* ¶¶ 45, 129, 167, 187.

Gaughan alleges that at no point during her employment did Rubenstein give her a contract that outlined the terms of her employment. *Id.* ¶ 54. Nor did Rubenstein give her an itemized statement detailing the portions of her paycheck withheld for taxes. *Id.* Instead, she alleges, Rubenstein "unilaterally imposed what he deemed to be the proper tax withholdings onto" Gaughan. *Id.* ¶ 65. In general during her employment, Gaughan claims, Rubenstein failed to give her any statements or records detailing, *inter alia*, the rate of her pay, allowances (such as compensation for

---

1. The facts related herein are drawn primarily from Gaughan's Complaint, Dkt. 2, *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the Complaint as true, drawing all reasonable inferences in Gaughan's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

meals or lodging), the dates of work covered by each paycheck, and overtime pay. *Id.* ¶¶ 58, 60.

Gaughan is a cancer patient who suffers from an autoimmune disease. *Id.* ¶ 93. These ailments make it difficult for Gaughan to perform strenuous tasks, especially in cold weather. *Id.* Gaughan claims that Rubenstein, on multiple occasions, nevertheless had her perform tasks for him in the midst of a snowstorm or "hurricane like" weather. *Id.* ¶ 94. Gaughan also alleges that Rubenstein is a chronic "hoarder," and his accumulation of objects spawned a putrid "dead mouse smell" within the office, which, Gaughan claims, threatened her health. *Id.* ¶¶ 140, 142.

Gaughan further alleges that Rubenstein required her, during non-working hours, to assist his adult daughter transport her luggage from Grand Central Station to Rubenstein's office. *Id.* ¶ 89. Also during her free time, Gaughan, at Rubenstein's behest, had to listen to CLE courses for him. *Id.* ¶ 83. Rubenstein also assigned Gaughan the task of serving process papers in an improper fashion and in neighborhoods that she viewed as dangerous, such as Sunset Park, Brooklyn. *Id.* ¶ 90. Gaughan claims that she suffered from emotional distress as a result of such tasks. *Id.* ¶¶ 92, 142, 144.

Rubenstein also allegedly offered Gaughan's services to other attorneys, who sometimes tasked Gaughan with delivering documents—services for which Gaughan was not compensated. *Id.* ¶ 98. At one point, Gaughan alleges, she told Rubenstein that she would no longer work for him seven days per week, *id.* ¶ 102, yet Rubenstein called Gaughan on weekends and insisted that she come to the office immediately, *id.* Once Gaughan began to resist Rubenstein's requests that threatened her health and safety, she alleges, Rubenstein responded by either withholding her paychecks or by writing post-dated paychecks that prevented her from cashing them at the time she received them. *Id.* ¶ 105.

On June 18, 2015, Gaughan and Rubenstein engaged in an argument that concluded with Rubenstein firing her. *Id.* ¶¶ 214, 219. On June 31, 2015, Gaughan's final day of employment, Gaughan claims that Rubenstein gave her two post-dated checks, but refused to give her a third, $600, check to repay her for out-of-pocket business expenses she had paid. *Id.* ¶ 249. These travails, Gaughan claims, jeopardized her "emotional and financial well-being" and led her to fear for her safety. *Id.* ¶ 92.

On August 25, 2015, Gaughan retained the law firm of Virginia & Ambinder, LLP ("V & A") to help resolve her claims against Rubenstein. Dkt. 18 ("Gaughan Aff.") ¶ 72.[2] On September 2, 2015, Gaughan's counsel at the time, Lloyd Ambinder, sent Rubenstein a demand letter that requested $34,847.04. The amount demanded included $14,826.38 for unpaid overtime wages, $2,597.14 for unpaid minimum wages, and $17,423.52 in liquidated damages. Dkt. 14, Ex. A ("Demand Letter").

After several months of negotiation between V & A and Rubenstein, the parties agreed to settle the claims for a total of $18,000. Dkt. 14, Ex. C ("Agreement") ¶ 1.1. On January 25, 2016, Gaughan exe-

---

**2.** The Complaint does not mention the Settlement Agreement, but its terms and existence are undisputed by the parties. The Court takes judicial notice of the Agreement for the purpose of resolving the pending motion to dismiss. For avoidance of doubt, had the Court held the Agreement non-cognizable on a motion to dismiss, the Court—for substantially the same reasons below—would have resolved these issues in defendant's favor by a grant of summary judgment.

cuted the Agreement. *Id.* ¶ 8.1. In pertinent part, it states:

> Both Parties and their respective representatives, employees, agents, partners, heirs, successors, subrogees and assignees, do hereby completely and irrevocably release and forever discharge the other Party and their respective representatives, employees, agents, partners, heirs, successors, subrogees, and assigns (the "Representatives") from any and all claims and rights of any nature whatsoever (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown) that either could have asserted in any action, the Pre-existing Action and any and all other claims and rights arising out of or relating to the subject matter of any action (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown) that either may have or could have filed or caused to be filed in any court of law or before any administrative agency, state or federal, or any arbitral forum existing prior to the execution of this Agreement from the beginning of the world until the date of this release. The Parties and their Representatives further agree and promise that they will neither bring any further charge, complaint, cross-complaint, action, or cause of action, against the other and its representatives based in whole or in part upon any claims, rights, demands, causes of action, or damages released pursuant to this Agreement, nor aid, abet, induce, or encourage any such claims by any person or entity.

*Id.* ¶ 3.1.

Gaughan thus agreed to release any and all claims against Rubenstein, including any claims relating to her employment.

## B. Procedural History

On October 13, 2016, Gaughan commenced this action, *pro se*, by filing the Complaint, which brought FLSA and NYLL claims. Construing the Complaint liberally, Gaughan appears to assert claims of unjust enrichment, negligence, breach of fiduciary duty, breach of contract, fraud, and discrimination on the basis of disability. *Id.* On January 24, 2017, Rubenstein moved for dismissal or, alternatively, for summary judgment as to all claims against him, on the grounds that all are precluded by the Agreement. Dkts. 11, 13. Rubenstein supported his motion with a memorandum of law. Dkt. 17 ("Def. Br."). On February 8, 2017, Gaughan filed a memorandum of law, Dkt. 19 ("Pl. Br."), and an affirmation, Dkt. 18 ("Gaughan Aff."), in opposition to the motions to dismiss and for summary judgment.

On February 21, 2017, Gaughan moved to amend the Complaint to add claims against Rubenstein and to add Jennifer Radwan as a defendant, Dkt. 20, and filed a memorandum of law in support, Dkt. 21 ("Pl. Amend Br."). On February 23, 2017, the Court issued an order referring the case to Judge Parker. Dkt. 24. On February 24, 2017, Rubenstein filed a reply memorandum of Law in support of his motions. Dkt. 25 ("Def. Rep. Br."). On March 10, 2017, Radwan filed an affirmation in opposition to Gaughan's motion to amend the Complaint to add Radwan, Dkt 27, and, on March 20, 2017, filed a second affirmation in opposition to the same motion. Dkt. 29. On March 21, 2017, Gaughan filed yet another motion to amend, to add claims against Radwan and Rubenstein, Dkt. 33, and a memorandum of law in support, Dkt. 34.

On May 23, 2017, Judge Parker filed the Report, recommending that the Court deny Gaughan's motion to amend as to all new claims against Rubenstein except a

hostile work environment claim under the NYCHRL, and to grant Gaughan's motion to amend as to five claims against Radwan. On June 6, 2017, Gaughan filed a written objection to the Report. Dkt. 39 ("Objection").

## II. Applicable Legal Standards

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct.

1955) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S.Ct. 1955.

A court must construe a *pro se* plaintiff's pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam)).

### B. Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### C. Motion to Amend

"A party may amend its pleading once as a matter of course within ... 21 days after serving it, or ... if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A party's leave to amend should be granted "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (internal quotation marks and citation omitted). A motion to amend is considered futile when it fails to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC,* 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

## III. Discussion

### A. Motion to Dismiss/Motion for Summary Judgment

### 1. Preclusive effect of the Agreement under *Cheeks*

The viability of Gaughan's claims against Rubenstein turns on whether the Agreement between Gaughan and Rubenstein precludes these claims. Relying on the Second Circuit's decision in *Cheeks*, Gaughan contends that FLSA claims resolved by a pre-litigation, out-of-court settlement agreement cannot bind the parties involved unless either the Department of Labor ("DOL") or a court had approved the agreement's terms. Gaughan therefore argues that, because the Agreement was never approved by the DOL or by a district court, she is not bound by its terms. Rubenstein counters that *Cheeks* does not apply to the Agreement, because it was entered into before any litigation commenced and thus fall outside of the purview of Federal Rule of Civil Procedure 41, which is the subject of the *Cheeks* decision.

For the reasons that follow, the Court agrees with Rubenstein, and holds that *Cheeks* does not apply to the Agreement. Its terms thus bind Gaughan and require dismissal of all her claims against Rubenstein.

Federal Rule of Civil Procedure 41, in relevant part, states that: "*Subject to ... any applicable federal statute*, the plaintiff may dismiss an action without a court order by filing: ... (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). In *Cheeks*, the Second Circuit held that "in light of the unique policy considerations underlying the

FLSA," the FLSA fits "within Rule 41's 'applicable federal statute exception.'" Thus, under Rule 41(a)(1)(A)(ii), stipulated dismissals settling FLSA claims with prejudice "require approval of the district court or the DOL to take effect." *Cheeks*, 796 F.3d at 206.

By its terms, *Cheeks* thus applies only to settlement agreements that occur within the context of Rule 41. And Rule 41, in turn, does not apply to settlement agreements entered into entirely outside the litigation context, like the Agreement at issue here. Rule 41 applies instead to dismissals, which, *a fortiori*, cannot occur unless and until an action is commenced in court. Fed. R. Civ. P. 41. Because the Agreement in this case was executed long before Gaughan brought claims in court against Rubenstein, Gaughan cannot rely on *Cheeks* as a basis to elude Rubenstein's motion to dismiss.

The Second Circuit has not considered, outside of the context of Rule 41, whether an pre-litigation agreement to settle FLSA claims—or, as here, a broader settlement agreement that waives, among others, FLSA claims—can be binding in the absence of DOL or court approval. Out-of-circuit cases reflect different outcomes.

On the one hand, the Fifth Circuit held, in *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012), that a preclusive FLSA settlement agreement executed before any court action was commenced was binding, and effectively precluded later FLSA claims. As in this case, the plaintiffs in Martin—with the guidance of their labor union representatives—settled their FLSA dispute before bringing suit. *See* 688 F.3d at 249–50. Like that here, the agreement of the parties was the product of a negotiation process undertaken between counseled plaintiffs and their employer. *See id.* at 249, 257.

On the other hand, the Eleventh Circuit held in *Lynn's Food Stores, Inc. v. United States By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350 (11th Cir. 1982), that a pre-litigation agreement waiving plaintiffs' rights to bring FLSA claims was invalid. *See Lynn's Food Stores*, 679 F.2d 1350. The Eleventh Circuit based that decision on its conclusion that the terms of the settlement agreement reflected an abuse of bargaining power, and that the unrepresented plaintiffs appeared to have been largely unaware at the time of the agreement that they possessed rights under the FLSA. *See id.* at 1351, 1354.

Although *Martin* and *Lynn's Food* reach different bottom-line outcomes, the two cases can be reconciled on their vastly different facts, particularly relating to whether the employees had been ably represented at the time they entered into the settlement agreement, as the Second Circuit recognized in *Cheeks*. *See Cheeks*, 796 F.3d at 204 (*Martin* "carved out an exception from the general rule" [established in *Lynn's Food*] and thus "cannot be read as a wholesale rejection of *Lynn's Food*"). In *Martin*, the plaintiff-employees' labor union had settled the employees' claims against their employer on their behalf. *Martin*, 688 F.3d at 249. Under the collective bargaining agreement between the employees and the employer, the union was the acknowledged "exclusive representative of the employees in the bargaining unit." *Id.* When a dispute arose surrounding the employees' hours worked and hence the wages owed them, the union and the employer entered into negotiations, which resulted in the settlement agreement. *Id.* But, before the union representatives signed that agreement, the plaintiffs filed a lawsuit against their employer regarding the same wage dispute. *Id.* at 249–50.

On these facts, the Fifth Circuit upheld summary judgment for the employer, holding that the employees'

FLSA rights were adhered to and addressed through the Settlement Agreement, not waived or bargained away ... [The] [employees' union] did not waive FLSA claims, but instead [employees], with counsel, personally received and accepted compensation for the disputed hours. We reiterate that FLSA substantive rights may not be waived in the collective bargaining process, however, here, FLSA rights were not waived, but instead, validated through a settlement of a bona fide dispute, which [the employees] accepted and were compensated for.

*Id.* at 257. Thus, the Fifth Circuit recognized, given the fairly bargained-for resolution reached between able counsel, there was no basis to nullify the terms of the settlement agreement. The policies animating the FLSA—namely, neutralizing the employer-employee discrepancy in bargaining power and preventing the ignorant waivers of FLSA rights—were not undermined by honoring such an agreement. *See id.* at 257.

*Lynn's Food* is consistent with the distinction *Martin* drew between bona fide settlement agreements entered into by counseled disputants and agreements arising out of exploitative, or potentially exploitative, arrangements. There, the DOL initiated an investigation that led it to conclude that the employer, Lynn's Food Stores, Inc. ("Lynn's"), had violated multiple FLSA provisions, including as to minimum wages and overtime pay. 679 F.2d at 1351. Accordingly, the DOL found that Lynn's was liable to its employees, under the FLSA, for both unpaid wages and liquidated damages. *See* 29 U.S.C. § 216(b); 679 F.2d at 1351. After negotiations with the DOL broke down, Lynn approached its employees unilaterally. 679 F.2d at 1351. Lynn's offered its employees $1,000, to be distributed among them *pro rata*, in exchange for their signing an agreement to waive all future potential

FLSA claims against Lynn's. *Id.* Several employees signed the agreement and accepted their *pro rata* share of the $1,000, and waived their back wages claims, which the DOL valued at more than $10,000. *Id.* Lynn's then brought suit in district court to obtain court approval. *Id.*

Affirming the district court's finding that the settlement agreement was invalid, the Eleventh Circuit emphasized that the employees had "seemed unaware that the [DOL] had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute." *Id.* at 1354. The Eleventh Circuit also noted that there was "no evidence that any of the employees [had] consulted an attorney before signing the agreements." *Id.* In fact, the court noted, "[s]ome of the employees who signed the agreement could not speak English." *Id.* As such, the Eleventh Circuit held, the settlement agreement between Lynn's and its employees reflected "the sort of practices which the FLSA was intended to prohibit." *Id.*

District courts in the Second Circuit have limited *Martin* to pre-litigation settlements. *See Peralta v. Soundview at Glen Cove, Inc.*, 2013 WL 2147792 at *2–3, 2013 U.S. Dist. LEXIS 70239 at *7 (E.D.N.Y. May 16, 2013); *Files v. Federated Payment Sys. United States*, 2013 WL 1874602 at *2–3, 2013 U.S. Dist. LEXIS 66413 at *6 (E.D.N.Y. April 2, 2013). In both *Peralta* and *Files*, the employees brought suit before a preclusive settlement agreement had been reached. *See Peralta*, 2013 WL 2147792 at *2–3, 2013 U.S. Dist. LEXIS 70239 at *7; *Files*, 2013 WL 1874602 at *2–3, 2013 U.S. Dist. LEXIS 66413 at *6. In each, the court distinguished *Martin* on the grounds that it involved a valid pre-litigation settlement not triggering the FLSA. *See Peralta*, 2013 WL 2147792 at *2–3, 2013 U.S. Dist. LEXIS 70239 at *7; *Files*, 2013 WL

1874602 at *2–3, 2013 U.S. Dist. LEXIS 66413 at *6. In contrast, in *Peralta* and *Files*, the settlement invoked by the employer was one the parties had reached, or ostensibly reached, long "after the commencement of the case." *Peralta*, 2013 WL 2147792 at *2–3, 2013 U.S. Dist. LEXIS 70239 at *7; *Files*, 2013 WL 1874602 at *2–3, 2013 U.S. Dist. LEXIS 66413 at *6. Similarly, a district court in Pennsylvania recently distinguished between *Martin* and *Lynn's Food* based on the timing of the settlement agreement relative to the litigation and ensuing judicial review *See Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 528 (E.D. Pa. 2016). The court in *Kraus* stated that:

> [the] primary difference between the *Lynn's Food* and [*Martin*] standards is the timing of the judicial scrutiny. The Fifth Circuit scrutinized the agreement ... at some point after the parties entered it once a question arose over the settlement's enforceability. Thus, [*Martin*] stands for retrospective scrutiny to determine the agreement's enforceability *ex post*. ... In contrast, the *Lynn's Food* standard is applied prospectively to approve the agreement *ex ante*.

*Id.*

■ A key question here, then, is how this case aligns with these precedents. The Court's assessment, upon due consideration, is that the circumstances of the agreement here are fairly analogous to those in *Martin*. As in *Martin*, the settlement agreement waiving rights under the FLSA in return for a significant sum of money was entered into entirely outside the context of litigation, with the employee represented by counsel. *Martin*, in fact, distinguished *Lynn's Food* on those grounds, emphasizing that (1) "the dispute in *Lynn's Food Stores* had arisen as a result of a [DOL] investigation;" (2) the employees in *Lynn's Food* had no idea they were owed wages pursuant to the

FLSA; and (3) the employees never retained an attorney. *Martin*, 688 F.3d at n.10. And, as in *Martin* but unlike in *Lynn's Food*, Gaughan was made aware of her FLSA rights. Indeed, her pre-settlement demand letter to Rubenstein, prepared by her counsel, sought the FLSA remedies of back pay and liquidated damages. And the significant consideration obtained by Gaughan further refutes the concern expressed in *Lynn's Food* that the employee relinquishing her FLSA rights have been exploited. Gaughan's demand letter to Rubenstein sought $34,847.04, and, after months of negotiation, she agreed to accept $18,000 in exchange for releasing her claims. Gaughan Aff., Exs. H, R, N; Agreement ¶¶ 1.1, 8.1. Rubenstein also agreed to relinquish any claim she had against Gaughan for unpaid legal fees. Agreement ¶ 1.7. Far from being exploited, the counseled Gaughan thus obtained substantial value.

The Court therefore upholds as consistent with the FLSA Gaughan's pre-litigation settlement agreement with Rubenstein. There is no reason to view that agreement as the product of one-sided bargaining. And to hold otherwise, given the procedural and substantive indicia of fairness present here, would inhibit productive settlements. It would effectively require that any parties, even ably counseled plaintiffs, wishing to settle an FLSA dispute out-of-court without bringing suit, obtain judicial or agency approval for their settlement. The Court is unaware of no charter for imposing such a requirement

### 2. Duress and Lack of Approval and Communication

■ In opposing Rubenstein's motion to dismiss based on the settlement agreement, Gaughan claims for the first time that she had been under "duress" when she signed the Agreement. She claims that her counsel, V & A, did not discuss the

Agreement with her, and that she yielded to V & A's pressure to sign it because she was needed money. Pl. Br. at 31, 51. She also alleges that after V & A and Rubenstein reached an agreement, V & A relayed the terms to her, and requested that she approve the Agreement "by Friday of this week." Gaughan Aff., Ex. P. Otherwise, she claims, V & A told her that it would return Rubenstein's check and withdraw as her counsel. *Id.*

Even taking these factual allegations as true, they fall short of the showing duress so as to warrant voiding the Agreement. *See, e.g., McIntosh v. Consolidated Edison Co.,* 1999 WL 151102 at *2, 1999 U.S. Dist. LEXIS 3264 at *5 (S.D.N.Y. Mar. 16, 1999) (perceived pressure the plaintiff felt from his attorney together with the plaintiff's fragile mental state provided an insufficient basis on which to find duress). To invalidate a contract on the grounds of duress,

> one of three circumstances must be present: duress by physical compulsion, duress by threat, or duress by undue influence. Duress may not be found merely from the existence of a difficult bargaining position or the pressure of financial circumstances. To succeed on a theory that an agreement was procured by duress, a plaintiff must show that he was compelled to agree to its terms by way of wrongful and oppressive conduct that precluded the plaintiff from the exercise of his own free will.

*Id.* Gaughan, however, does not allege facts supporting that V & A placed her under duress. She does not claim that V & A physically compelled or threatened her to execute the Agreement or engaged in "wrongful and oppressive conduct" that prevented Gaughan from "the exercise of [her] own free will." Rather, in vague and conclusory fashion, Gaughan states only that "she felt pressured to sign the documents." Pl. Br. at 31. And Gaughan's unremarkable correspondence with V & A also reveals no sign of improper compulsion.[3]

*Nall v. Mal–Motels, Inc.,* 723 F.3d 1304 (11th Cir. 2013), on which Gaughan relies for her claim of duress, is inapposite. To begin with, the *Nall* settlement would have required court or agency approval under *Cheeks* because, at the time the employer and employee attempted to negotiate a settlement, the employee in *Nall* had—unlike Gaughan—already initiated suit. *Id.* at 1305. And the facts of *Nall* are a far cry from those here. The employer in *Nall,* bypassing the employee's attorney, contacted the employee and secured a meeting in which the employee agreed to release all claims in exchange for a payment of $2,000 to $3,000, far below the sum the employee was then seeking in court. *Id.* at 1305–06. The employer also coerced the employee, who was in dire financial straits, to sign the agreement without reading it. *Id.* at 1305. Here, in contrast, Gaughan, acting through counsel, demanded around $35,000 and settled for $18,000 plus a relinquishment of potential counterclaims after a long negotiation period. And, unlike the *Nall* plaintiff, Gaughan admits understanding that by signing the Agreement and depositing the $18,000, she was foregoing her right to sue Rubenstein for the FLSA claims at issue. Gaughan Aff., Ex. R.

The Court therefore rejects Gaughan's claim of duress because the facts on which it is based are legally insufficient to show duress.

### 3. Release Provision of the Agreement

Gaughan also asserts that the Agreement's release provision is overly broad

---

**3.** On the contrary, it appears that the deadline for signing recited in V & A's letter to Gaughan was extended, in that the Friday in V & A's letter was January 15, 2016—10 days before Gaughan executed the Agreement. Gaughan Aff., Ex. P; Agreement ¶ 8.1.

and thus void. Pl. Br. at 40. She relies on *Martinez v. Gulluoglu LLC*, 2016 WL 206474, 2016 U.S. Dist. LEXIS 5366 (S.D.N.Y. Jan. 15, 2016). There, this Court disapproved of an FLSA settlement agreement in part because the agreement contained an unduly broad release provision. *See Martinez*, 2016 WL 206474, 2016 U.S. Dist. LEXIS 5366. But that case, too, is inapposite. It involved a settlement agreement that required judicial approval after commencement of an FLSA action, requiring court approval. *See Cheeks*, 796 F.3d 199. In contrast, this approval was executed prior to the initiation of any litigation. Accordingly, it does not require this Court's approval.

■ In any event, the record reveals consideration for a broader release by Gaughan. Apart from having employed Gaughan, Rubenstein had served as her attorney in divorce proceedings. Under the Agreement, Rubenstein forewent claims against Gaughan for unpaid legal fees. That supplied consideration for a release by Gaughan of claims under than under the FLSA.

**B. The Report**

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate's findings, the district court must make a *de novo* determination as to those findings. *Id.* § 636(b)(1). However, if a party "makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008), *aff'd*, 367 Fed.Appx. 210 (2d Cir. 2010) (summary order). And, while *pro se* parties are, as always, treated leniently in making objections, their objections to a Report "must be specific and clearly aimed at particular findings." *Id.*

In her Objection, Gaughan objects to three of Judge Parker's recommendations, namely, to deny Gaughan's motion to amend her Complaint to add, against Radwan, (1) a claim for a hostile work environment under NYCHRL, (2) claims for disability discrimination under NYCHRL, NYSHRL, and the ADA, and (3) retaliation claims under NYCHRL and NYSHRL. Gaughan's objections are largely conclusory, and arguably justify review only for clear error, *see id.* However, out of solicitude for Gaughan, the Court examines these objections under the more generous *de novo* standard. As to each, the Court finds Gaughan's objections unpersuasive, and adopts Judge Parker's Report in its entirety.

**1. NYCHRL Hostile Work Environment Claim**

■ Judge Parker denied Gaughan's motion to add an NYCHRL hostile work environment claim against Radwan. To establish such a claim, the NYCHRL, unlike federal law, does not require the employer's conduct to have been severe or pervasive; the plaintiff must instead demonstrate that she was treated "less well" than other employees on account of a protected characteristic. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 73–78, 872 N.Y.S.2d 27 (1st Dept. 2009). Judge Parker acknowledged the NYCHRL's more lenient standard, but denied Gaughan's hostile environment claims against Radwan because Gaughan, in the TAC, "failed to tie [Radwan's] actions to her gender or any other protected characteristic." Report at 17. The Report explained: "The TAC does not set forth any basis upon which it even could be inferred that Radwan's conduct

was motivated by a discriminatory animus." *Id.*

Gaughan objects to this recommendation on multiple grounds, largely based on new factual claims. Gaughan now asserts that Radwan told her that she was "superior" to Gaughan in every way but two: level of physical attractiveness and ability to interpersonally communicate. Objection at 2. Gaughan further now claims that Radwan often "made hostile overtures" toward Gaughan, "grabbed [Gaughan's] personal belongings out of her hands," and instilled discomfort in Gaughan by "dictating ... [to Gaughan] what to write regarding certain clients['] state of mind when witnessing will signatures." *Id.* Radwan acted this way, Gaughan now contends, while aware that Gaughan was in a vulnerable state as a result of her cancer, her autoimmune disease, and her abusive ex-husband. *Id.*

Gaughan also now claims that Radwan exploited her "physical attributes for [Rubenstein's] and Radwan's personal and business gains," despite knowing that Gaughan had suffered from anorexia and body dysmorphia. *Id.* at 2–3. For example, Radwan had Gaughan call a "male administrative clerk at the Surrogates Court in New York County and ask how to serve papers on an incarcerated individual because [Radwan] believed that the clerk would respond to [Gaughan] because he found her attractive." *Id.* at 5. Radwan also allegedly had Gaughan contact officers at Kings County Surrogate Court—whom Gaughan claims were physically attracted to Gaughan—to discover the marital status and age of a clerk to whom Radwan was attracted. *Id.* Gaughan also alleges that Radwan once called Gaughan in the middle of the night for several hours to reflect upon an affair Radwan was having. *Id.* at 4.

In her objections, Gaughan asserts that, as to male occupants of the office, Radwan never invaded their personal body spaces, acted aggressively towards them or instilled discomfort in them, or solicited them. *Id.* at 3, 5. In contrast, Gaughan now asserts, Radwan often berated Gaughan when she answered the phone by stating, "Lee Rubenstein's office" without mentioning Radwan's name. *Id.* at 3. Gaughan alleges that Radwan did not treat Rubenstein's son, who worked in the office as a receptionist, in this manner *Id.* Finally, Gaughan now states, Rubenstein acknowledged Radwan's hostile behavior toward Gaughan, stating that Radwan had subjected Gaughan to Radwan's "angry mood swings." *Id.* at 4.

The Court declines to permit Gaughan to bring this claim against Radwan based on these post-Report factual allegations. Gaughan's proposed Third Amended Complaint ("TAC") had made no claim of discrimination on the basis of gender, or, for that matter, any other protected characteristic. The Court declines to credit these belated factual allegations as a basis to not heed Judge Parker's Report. *See, e.g., Frankel v. N.Y. State Office of Children & Family Servs.*, 2015 WL 1290973 at *4, 2015 U.S. Dist. LEXIS 36390 at *6 (S.D.N.Y. Mar. 23, 2015) (declining to consider an argument "brought for the first time in [the plaintiff's] objections to the [report and recommendation]" because such an argument is "procedurally improper"). On *de novo* review of the Report, the Court finds—substantially for the reasons stated above and in the Report—that Gaughan's claim of a hostile work environment is futile, because the claim fails to allege discrimination based on a protected characteristic. As such, the Court adopts Judge Parker's recommendation, and declines to allow Gaughan to add, in this lawsuit, this claim against Radwan.

### 2. Disability Discrimination

■ A *prima facie* failure-to-accommodate claim under the NYSHRL and NYCHRL requires a plaintiff to show that:

"(1) plaintiff is a person with a disability under the meaning of [the NYSHRL or NYCHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Nieblas–Love v. N.Y.C. Hous. Auth.*, 165 F.Supp.3d 51, 73 (S.D.N.Y. 2016).

Judge Parker recommended that Gaughan not be permitted to add NYSHRL and NYCHRL failure-to-accommodate disability discrimination claims against Radwan because "the TAC is silent as to whether [Gaughan's] alleged disabilities affected her ability to move files in the office"—a task that was the foundation of Gaughan's disability claims. Report at 22. Thus, the Report stated, Gaughan "failed to plead facts establishing that she required a reasonable accommodation due to her disabilities in order to carry out the requested task." *Id.* Furthermore, the Report noted, the TAC does not allege that Gaughan had requested from Radwan a disability accommodation or that Gaughan had required a disability accommodation to move files or boxes. *Id.* Instead, the TAC asserted only that Radwan had been aware of Gaughan's severe medical state. *Id.* Finally, the Report noted, the TAC does not allege that Radwan ever denied any request for accommodation. *Id.*

As for Gaughan's motion to add an ADA claim against Radwan, Judge Parker denied that motion because the ADA does not provide for individual liability. *Id.* at 11.

Gaughan now objects to Judge Parker's recommendation that she not be allowed to add claims of disability discrimination, claiming that Radwan knew of her medical conditions, yet "shrugged" when Gaughan complained to her regarding Rubenstein's requests that Gaughan clean out storage units and remove heavy boxes from Rubenstein's office. Objection at 6.

This objection does not carry the day, because it fails to cure a fatal defect that the Report noted in Gaughan's proposed failure-to-accommodate claims under NYCHRL and NYSHRL, to wit, that Gaughan fails to adequately allege either a request or a need for accommodation from Radwan due to Gaughan's alleged disabilities. On its *de novo* review of the Report, the Court is persuaded—for substantially the reasons set forth above and in the Report—that Gaughan's claims under the NYCHRL, the NYSHRL, and the ADA are futile and that Gaughan should not be permitted to add them here. The Court therefore adopts the Report as to these claims, and denies Gaughan's motion to add failure-to-accommodate claims against Radwan under the NYCHRL, NYSHRL, and the ADA.

### 3. Retaliation Claims

■ To state a *prima facie* claim for retaliation under the NYSHRL, a plaintiff must demonstrate: "[i] participation in a protected activity known to defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp.2d 392, 413 (S.D.N.Y. 2012). Under the NYCHRL, a plaintiff need not show that any employment action was taken against her, but must instead show that, as a result of her engaging in a protected activity, some action was taken that would be reasonably likely to deter her from engaging in the activity again. *Mayers v. Emigrant Bancorp, Inc.*, 796 F.Supp.2d 434, 446 (S.D.N.Y. 2011).

Judge Parker recommended that Gaughan's motion to add NYSHRL and NYCHRL retaliation claims against Radwan be denied, because, as pled, Gaughan

complained to Radwan only about the office's unsanitary condition, and did not complain about any protected activity. Report at 21. Thus, Judge Parker reasoned, "[t]he TAC is unclear as to what [Gaughan's] protected activity was." *Id.* And, Judge Parker reasoned, even if Gaughan could show she had engaged in a protected activity, Gaughan's claim would fail as a matter of law for failure to adequately allege causation, *id.* at 22: The TAC does not allege facts to support that Radwan had a motive to retaliate against her, and Gaughan's termination occurred long after Gaughan could have engaged in any conceivable protected activity. Thus, there is no basis to infer retaliation from the close temporal proximity between protected conduct and an adverse act. *Id.*

In objecting to these recommendations, Gaughan states that Radwan "would approach [Gaughan] menacingly" when Gaughan resisted requests that made her uncomfortable, such as asking Gaughan to use her feminine attributes for Radwan's personal benefit. Objection at 8. And to fortify her claim of causation, Gaughan now asserts that "each time [she] complained directly to [Rubenstein] or other tenants in the suite, [her] pay was withheld and as this Court is aware, Radwan never compensated [her]." *Id.*

Reviewing the issue *de novo*, the Court denies Gaughan's motion to add retaliation claims against Radwan. Gaughan's objections are ultimately unresponsive to Judge Parker's sound legal conclusions. They also are largely based on new assertions of fact, improper at this stage. In any event, Gaughan has failed to allege participation in a protected activity, as defined under NYCHRL, or retaliation in response. Judge Parker was also correct to note that, for much the same reasons, Gaughan cannot sustain retaliation claims under the FLSA and NYLL. These claims, too, cannot proceed in the TAC.

### 4. The Remainder of the Report

With regard to the remainder of Judge Parker's Report, to which Gaughan has not objected, review for "clear error" is appropriate. *See Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.") (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g., Wilds v. United ed Parcel Serv.*, 262 F.Supp.2d 163, 169 (S.D.N.Y. 2003).

Careful review of Judge Parker's thorough and well-reasoned Report reveals no facial error in its conclusions; therefore, the Report is adopted in its entirety. The Court recognizes that to the extent that the Report permits Gaughan to amend her Complaint to add claims against Rubenstein—against whom the Court has dismissed Gaughan's Complaint entirely based on the settlement agreement—that aspect of the Report is now moot. But, for the reasons set forth in the Report, the Court will allow Gaughan to pursue her claims against Radwan for: (i) unpaid minimum wages; (ii) unpaid overtime wages; (iii) unpaid spread-of-hours compensation; (iv) failure to provide wage notices; and (v) untimely payment of wages.

### CONCLUSION

For the foregoing reasons, the Court (1) dismisses Gaughan's Complaint with prejudice as against Rubenstein, and (2) grants in part, and denies in part, Gaughan's motion to amend the Complaint to add claims against Radwan.

The Court directs the Clerk to terminate the motions pending at docket numbers 11, 13, 20, and 33, and to mail a copy

of this decision to plaintiff at the address on file.

SO ORDERED.

## OPINION, REPORT AND RECOMMENDATION

KATHARINE H. PARKER, United States Magistrate Judge

**TO: THE HONORABLE PAUL A. EN-GELMAYER, United States District Judge**

Plaintiff Aylin Gaughan, proceeding pro se, brings this action against Defendant Lee Rubenstein ("Rubenstein") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), breach of contract, disability discrimination, and commission of various common law torts.

Plaintiff now moves for leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15. Plaintiff's Proposed Third Amended Complaint ("TAC") adds a new defendant, Jennifer Radwan ("Radwan") (collectively with Rubenstein, "Defendants"), and asserts additional facts and causes of action against both Defendants. Both Plaintiff and Radwan also ask the Court to strike certain portions of the record in this action. As set forth herein, this Court recommends that Plaintiff's motion for leave to amend be denied in part. Additionally, as stated below, this Court grants Plaintiff's motion to amend in part, denies Plaintiff's motion to strike, and grants Radwan's request to strike in part.

## BACKGROUND

### A. Procedural History

On October 13, 2016, Plaintiff commenced this action against Rubenstein alleging a number of wage claims under the FLSA and NYLL. (Doc. No. 2.) When construed liberally in light of Plaintiff's pro se status, Plaintiff's 73-page Complaint also appears to assert claims for negligence, unjust enrichment, breach of fiduciary duty, breach of contract, fraud, and discrimination on the basis of disability against Rubenstein.

On January 24, 2017, Rubenstein filed a motion for summary judgment or, alternatively, to dismiss the Complaint in its entirety. (Doc. Nos. 11–17.) Rubenstein argues that Plaintiff's claims are barred by a prior settlement agreement in which Plaintiff released all claims against him and that the Complaint otherwise fails to state a claim. Plaintiff opposed Rubenstein's motion on February 8, 2017. (Doc. Nos. 18–19.) This motion is currently pending.

On February 21, 2017, Plaintiff filed a motion for leave to amend the Complaint. (Doc. Nos. 20–21.) Plaintiff's Proposed Amended Complaint asserted new facts and causes of action against Rubenstein, and also sought to add a new defendant, Radwan. On March 10, 2017, Radwan submitted an affirmation in opposition to Plaintiff's motion for leave to amend. (Doc. No. 27; *see also* Doc. No. 29.) Radwan argues that Plaintiff should not be permitted to amend the Complaint to add her as a defendant because Plaintiff cannot state a federal cause of action against her. Therefore, Radwan contends, amendment would be futile. As an alternative, if amendment is allowed, Radwan asks the Court to strike certain irrelevant and personally embarrassing allegations recited in Plaintiff's Proposed Amended Complaint.

On March 21, 2017, Plaintiff filed a second motion for leave to amend the Complaint and proffered the TAC. (Doc. Nos. 33–34.) No second amended complaint was ever filed. Because the TAC represents the most recent proposed amended pleading, it supersedes the previously proffered pleading and is the pleading addressed in this decision.

The TAC asserts all of the same claims as the initial Complaint, but also adds Radwan as a defendant and advances new causes of action against Defendants. Although the 87–page TAC is far from a model of clarity, Plaintiff appears to seek leave to assert the following new claims that were not alleged in the Complaint:

- retaliation and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e–2, against both Defendants;

- discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, against Radwan;

- retaliation and hostile work environment in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") against both Defendants;

- discrimination on the basis of disability in violation of the NYSHRL and NYCHRL against Radwan;

- intentional infliction of emotional distress against both Defendants;

- retaliation in violation of the FLSA and NYLL against both Defendants;

- violations of the FLSA and NYLL against Radwan, including for unpaid minimum wage, unpaid overtime compensation, unpaid spread-of-hours compensation, recordkeeping and notice violations, failure to make timely wage payments, and for holiday, sick, and vacation pay;

- fraud against Radwan; and

- tortious interference with contract against Rubenstein.

Plaintiff's March 21, 2017 motion also summarily requests that the Court strike all of Radwan's submissions to the Court pursuant to Federal Rule of Civil Procedure 12(f). Neither Rubenstein nor Radwan filed an opposition to Plaintiff's March 21, 2017 motion for leave to amend, but this Court has considered points raised by Radwan in her March 10 submission in reaching its decisions herein.

### B. Allegations In The TAC [1]

Rubenstein is the "owner, principle and manager of The Law Office of Lee A. Rubenstein." (TAC ¶ 12.) Plaintiff worked for Rubenstein in an administrative/paralegal capacity from approximately June or July 2013 to July 2015. (TAC ¶¶ 32, 243; *see also* Doc. No. 18, ¶ 4.) Rubenstein also served as Plaintiff's lawyer in connection with two legal proceedings. (TAC ¶¶ 22, 32.) Rubenstein and Radwan share an office suite, along with at least one other attorney. Radwan performs some work as an associate for Rubenstein's law practice, but also maintains her own separate private practice. (TAC ¶¶ 305–06.) Radwan contributes to the rent for the office suite and other office expenses. (TAC ¶ 306.)

During the course of Plaintiff's employment, she worked for Rubenstein's and Radwan's joint practice, as well as for their separate private practices. For Rubenstein, Plaintiff's work included: listening to CLE courses in the evenings (TAC ¶ 83), typing discovery requests (TAC ¶¶ 430–32), paying his bills (TAC ¶ 97), taking notes in court (TAC ¶ 270), escorting his children around New York City (TAC ¶¶ 164, 179, 181, 301), and a variety of other tasks. Plaintiff served subpoenas and delivered documents in inclement weather, at night, and under other dangerous circumstances. (TAC ¶¶ 90–94, 101, 119–20, 199–205.) Rubenstein did not ask his son, who worked in the office as a receptionist for a period of time, to perform similar tasks. (TAC ¶¶ 178–82, 425.)

---

1. Given the length of the TAC, this Court only summarizes the allegations relevant to the new claims Plaintiff seeks to add to this action.

Plaintiff's work for Radwan included making copies, delivering documents, witnessing the signing of wills, writing and re-writing notes to file about Plaintiff's observations during will signings, relaying Radwan's telephone messages, interacting with Radwan's clients, and filing papers with the court, among other tasks. (TAC ¶¶ 99, 307, 310, 316–18, 386–87, 406, 414, 486.) Radwan also represented to her personal clients that Plaintiff was her assistant. (TAC ¶ 415.) Plaintiff alleges that neither Rubenstein nor Radwan compensated her for the work she performed for Radwan.

Although Rubenstein told Plaintiff upon hire that she would be paid $17.50 per hour (TAC ¶ 37; *see also* Doc. No. 2, Ex. A), she was only paid $3.57 per hour in 2013 (TAC ¶ 37); approximately $4.16 per hour in 2014 (TAC ¶ 42); and $6.25 per hour in 2015. (TAC ¶ 44.) At various times, Plaintiff worked for Defendants six or seven days per week and for 10– to 14–hours per day, which included late nights, weekends, and holidays. (TAC ¶¶ 38, 42, 89, 96, 102, 132, 169, 174–75, 287, 405, 421, 432.) Plaintiff contends she was "frequently not allowed to take a full 30–minute uninterrupted lunch break." (TAC ¶ 96.) Plaintiff asserts she did not receive overtime pay, spread-of-hours compensation, holiday pay or other paid time off throughout the entirety of her employment. (TAC ¶¶ 38, 39, 45.) Rubenstein also allegedly failed to pay Plaintiff in a timely manner, including by withholding her paychecks or forward-dating the checks so they could not be immediately cashed. (TAC ¶¶ 45, 105, 128, 185–88, 191, 243–44, 408.)

Plaintiff complained to Radwan, Rubenstein, and others about her unlawful wages and untimely paychecks, but her complaints were ignored. (TAC ¶ 444, 128, 185, 382.) Based upon the number of hours that Plaintiff worked and using the agreed-upon straight-time rate of $17.50 per hour, Plaintiff claims she should have been paid $78,890, inclusive of overtime compensation, over the duration of her employment, but that she only was paid $20,600. (TAC ¶¶ 71, 73.)

Plaintiff also asserts that Defendants failed to provide her with wage notices or statements upon hire or at any other point during her employment, and failed to keep proper records regarding her employment. (TAC ¶¶ 47, 58, 60, 64, 241, 247.) According to Plaintiff, Defendants misclassified and misrepresented Plaintiff's employment to various governmental agencies, including the Internal Revenue Service and New York Workers' Compensation Board. (TAC ¶¶ 67–68, 477, 482, 484.) As a result, Plaintiff did not receive workers' compensation, unemployment, or disability benefits. (TAC ¶ 485.)

In addition, Plaintiff complains that Defendants were often rude to her and mistreated her in a variety of other ways, including, *inter alia*:

- Rubenstein failed to maintain a sanitary office environment. As a result, Plaintiff, who suffers from a compromised immune system and other disabilities, was forced to endanger her health by working in a "toxic and hazardous environment" with a "constant dead mouse smell." (TAC ¶¶ 139–43, 23–24, 90, 93.) Plaintiff complained about this environment to Radwan, Rubenstein, and other tenants of the office suite (TAC ¶¶ 143, 444);

- In 2013, Rubenstein told Plaintiff that he was attracted to her during a phone call (TAC ¶ 264);

- Rubenstein told Plaintiff that Radwan was the "smart one" whereas Plaintiff was the "pretty one," and, as such, he relied on Plaintiff to use her looks to carry out certain tasks, such as serving subpoenas, obtaining sealed files, or appearing with him in

court in front of male jurists (TAC ¶ 275);

- Rubenstein asked her to use her "feminine wiles" to obtain information from court personnel on numerous occasions (TAC ¶ 295);
- Rubenstein came to Plaintiff's home when she was sick and refused to leave, despite Plaintiff hinting that she wanted to rest (TAC ¶¶ 322–27);
- Radwan grabbed Plaintiff's cell phone out of Plaintiff's hand in court, which caused a fight between Radwan and Plaintiff (TAC ¶¶ 337–42);
- Radwan sometimes yelled for Plaintiff to come into her office rather than walk over to her to speak (TAC ¶¶ 353–55); and
- On one occasion, Radwan stepped into the office where Plaintiff was working, closed the door, and "aggressively invaded Plaintiff's space" to insist that they speak (TAC ¶¶ 361–68);
- Radwan complained that Rubenstein's files were encroaching her work space and told Plaintiff to move the heavy files, even though Radwan knew that Plaintiff suffered from physical limitations. (TAC ¶ 355.)

On June 18, 2015, Plaintiff and Rubenstein got into an argument after Plaintiff's personal computer was damaged by a corrupt file Rubenstein had asked her to load. (TAC ¶¶ 214–18.) During this argument, Rubenstein told Plaintiff that he no longer trusted her and was terminating her employment. (TAC ¶ 219.) Rubenstein also said that he blamed Plaintiff for the fact that he was named as a third-party defendant in a legal malpractice suit. (TAC ¶ 447.) On Plaintiff's last day of employment, July 31, 2015, Rubenstein paid Plaintiff in two checks, but instructed her that she could not cash them immediately and dated them for five days in the future. (TAC ¶ 243.) Rubenstein refused to give

Plaintiff a third check for additional amounts owed. (TAC ¶¶ 243–44, 249–50, 452.)

After Plaintiff's termination, Rubenstein approached Andrew Hoffman, an attorney who shared office space with Defendants and also represented Plaintiff in a malpractice action, for legal advice regarding Plaintiff's threatened wage-and-hour claims. (TAC ¶ 453.) Hoffman subsequently told Plaintiff that he could no longer represent her due to the tension created by Rubenstein approaching him in the office. (TAC ¶ 453.) Another attorney representing Plaintiff in a legal malpractice action also withdrew as counsel after Rubenstein's counsel contacted the attorney and told him that representing Plaintiff may result in a malpractice action against him. (TAC ¶ 460.)

## DISCUSSION

### I. LEGAL STANDARD

#### A. Motion to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within ... 21 days after serving it, or ... if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotations and citation omitted).

Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). Proposed amendments are futile when they would fail to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Because determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[f]utility is generally adjudicated without resort to any outside evidence." *Wingate v. Gives*, No. 05-cv-1872 (LAK) (DF), 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009) (citing *Nettis v. Levitt*, 241 F.3d 186, 194, n.4 (2d Cir. 2001)).

In assessing whether a plaintiff has stated a claim under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). To survive a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id.* It must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). And, it must contain more than a "formulaic recitation of the elements of a cause of action." *Id.* As the U.S. Supreme Court explained in *Ashcroft v. Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

This same pleading standard applies to both counseled and pro se complaints. *See Legeno v. Corcoran Grp.*, 308 Fed.Appx. 495, 496 (2d Cir. 2009); *Jenkins v. N.Y.C. Dep't of Educ.*, No. 10-cv-6159 (BSJ) (THK), 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011) (pro se status "does not ... excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure"). However, a pro se plaintiff's complaint must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpreted as raising the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

### B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), court may "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Federal courts have discretion in deciding whether to grant motions to strike." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13-cv-0538 (PAE), 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013) (quoting *Allocco v. Dow Jones & Co., Inc.*, No. 02-cv-1029 (LMM), 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002)). However, "courts should not tamper with the pleadings unless there is a strong reason for so doing," and should not ordinarily "strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Thus, a court will not strike matter from a pleading unless it is satisfied that: "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014). For example, a pleading may be stricken, under appropriate circumstances, if "the pleading is obviously insufficient as a matter of law, or the severity of the prejudice outweighs the materiality of the allegation." *Orientview Techs. LLC*, 2013 WL 4016302, at *3. "[I]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Schoolcraft*, 299 F.R.D. at 67 (quoting 5C FED. PRAC. & PROC. CIV. § 1382 (3d ed. 2011)).

## II. PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff seeks leave to amend her Complaint to assert an array of new claims against Rubenstein, Radwan, or both Defendants jointly. Plaintiff argues that amendment should be permitted under the liberal Rule 15 standard because her request to amend was made in a timely manner, Defendants will not be prejudiced by amendment, and amendment is not futile. Defendants apparently concede that Plaintiff's proposed amendments are not untimely or prejudicial. And while Radwan summarily argues that amendment would be futile as to the federal claims that Plaintiff seeks to advance against her, De-

fendants have not meaningfully addressed whether the majority of the new claims asserted in the TAC plausibly state a claim for relief. Nevertheless, because the Court has the inherent authority to dismiss meritless claims *sua sponte*, this Court has assessed whether amendment would be futile as to each new claim that Plaintiff seeks to add in the TAC. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam).

### A. Title VII And ADA Claims

The TAC seeks to add claims of retaliation and hostile work environment in violation of Title VII against both Defendants. The TAC also appears to assert a new claim for disability discrimination under the ADA against Radwan.[2]

■ Plaintiff cannot state a claim against Defendants under either Title VII or the ADA because neither statute provides for individual liability. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Darcy v. Lippman*, 356 Fed.Appx. 434, 436–37 (2d Cir. 2009) (noting that Title VII does not create causes of action against individual supervisors); *Castagna v. Luceno*, No. 09-cv-9332 (CS), 2011 WL 1584593, at *10 (S.D.N.Y. Apr. 26, 2011) (dismissing Title VII claims against company president); *Gomez v. N.Y.C. Police Dep't*, 191 F.Supp.3d 293, 302–03 (S.D.N.Y. 2016) (holding that there is no individual liability under Title VII or the ADA).

Radwan also argues that Plaintiff cannot state a claim under Title VII or the ADA

---

**2.** When the allegations in Plaintiff's initial Complaint are read liberally in light of her pro se status, the Complaint can be reasonably construed as asserting a claim against Rubenstein for disability discrimination in violation of the ADA, the NYSHRL, and the NYCHRL. Accordingly, this Court does not

address the merits of Plaintiff's claims for discrimination on the basis of disability against Rubenstein in connection with the instant motion to amend except to note that the ADA does not recognize individual liability.

because Plaintiff failed to exhaust her administrative remedies. A plaintiff is required to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and state or local equivalent before bringing Title VII or ADA claims in federal court. *See* 42 U.S.C. § 2000e–5(c)-(e); 42 U.S.C. § 12117(a); *see also Gomez*, 191 F.Supp.3d at 299. Such a claim must be brought within 300 days of an adverse employment action. 42 U.S.C. § 2000e–5(e). Although a plaintiff is not required to explicitly demonstrate exhaustion at the pleading stage, *DiPetto v. U.S. Postal Serv.*, 383 Fed. Appx. 102, 104 (2d Cir. 2010), a claim will not withstand a motion to dismiss if it is clear from the face of the complaint that a plaintiff has not exhausted her administrative remedies. *See Gomez*, 191 F.Supp.3d at 299; *Arnold v. Research Found. for the State Univ. of N.Y.*, 216 F.Supp.3d 275, 286–88 (E.D.N.Y. 2016). Here, Plaintiff does not allege that she filed a charge of discrimination with the EEOC, the New York State Division of Human Rights or the New York City Commission on Human Rights; nor does she dispute Radwan's assertion that her Title VII and ADA claims are unexhausted. Thus, Plaintiff's request to amend the Complaint to add claims under Title VII and the ADA also appears to be futile on the grounds that such claims are unexhausted. Further, because Plaintiff's employment ended in July 2015, any claim filed with the EEOC would be time-barred.

Accordingly, the Court recommends that Plaintiff's motion to amend the Complaint to add claims under Title VII and the ADA be denied with prejudice.

## B. Hostile Work Environment Under The NYSHRL And NYCHRL Against Both Defendants

The TAC appears to allege that both Defendants subjected Plaintiff to a hostile work environment in violation of the NYSHRL and NYCHRL.

To state a claim for hostile work environment under the NYSHRL, a plaintiff must establish that "her workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Lenart v. Coach, Inc.*, 131 F.Supp.3d 61, 66 (S.D.N.Y. 2015) (quoting *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)). In determining whether a plaintiff meets the "severe or pervasive" standard, courts must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the plaintiff's job performance. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (quotation marks omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

The standard for maintaining a hostile work environment claim is lower under the NYCHRL than under the NYSHRL and Title VII. This is because the NYCHRL was intended to be more protective than its state and federal analogs. *Farrugia v. N. Shore Univ. Hosp.*, 13 Misc.3d 740, 747, 820 N.Y.S.2d 718 (N.Y. Sup. Ct., N.Y. Cnty., 2006). Under the NYCHRL, a plaintiff need not demonstrate that the treatment was "severe or pervasive" to demonstrate a hostile work environment. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 73–78, 872 N.Y.S.2d 27 (1st Dep't 2009). Instead, a plaintiff need only show that she has been treated "less well" than other employees because of a protected charac-

teristic. *Id.* at 78, 872 N.Y.S.2d 27. Under both the NYSHRL and NYCHRL, the plaintiff must allege some facts to support the inference that the hostile treatment was due to a protected characteristic. *See id.*; *Lenart*, 131 F.Supp.3d at 67–68 (collecting cases).

### 1. *Plaintiff's Hostile Work Environment Claims Against Rubenstein*

■ In support of her hostile work environment claim against Rubenstein, Plaintiff alleges that he: (i) told Plaintiff that he was attracted to her on one occasion over the phone (TAC ¶ 264); (ii) stated that Radwan was the "smart one" and Plaintiff was the "pretty one" and, as such, relied on Plaintiff to perform tasks where she could use her appearance to gain an advantage, such as by accompanying Rubenstein to court when he was appearing in front of a male jurist (TAC ¶ 275); (iii) frequently asked Plaintiff to use her "feminine wiles" to obtain information from court personnel (TAC ¶ 295); and (iv) came to her home uninvited to bring her food when she was sick and refused to leave, despite her hints that she wanted to rest. (TAC ¶¶ 322–24.) The TAC also alleges that Rubenstein demanded Plaintiff perform tasks that she deemed to be inappropriate, such as delivering and serving documents under potentially dangerous conditions, forcing her to work late nights, weekends and holidays, and requiring her to escort Rubenstein's children around New York City. Plaintiff contends that Rubenstein did not ask his son, who also worked in the office during breaks from college, to perform these types of tasks. Plaintiff further alleges that Rubenstein was rude and yelled at her and others on numerous occasions.

These allegations are insufficient to support an inference that Plaintiff faced discriminatory harassment "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation omitted). While Plaintiff's allegations portray Rubenstein as a demanding boss, the facts set forth in the TAC do not support the inference that the majority of the complained-of conduct was motivated by Plaintiff's gender or any other protected trait. *See Lenart*, 131 F.Supp.3d at 67–68 (holding that a plaintiff must establish that the conduct giving rise to the hostile environment occurred because of a protected characteristic); *Boonmalert v. City of New York*, No. 16-cv-4171 (KMW) (KNF), 2017 WL 1378274, at *6 (S.D.N.Y. Apr. 12, 2017) (same). The TAC actually attributes a number of other, non-discriminatory motives to Rubenstein's conduct, including that he asked Plaintiff to deliver documents because he was too frugal to hire a courier. (*See* TAC ¶ 189.)

Only the four allegations summarized above—out of myriad allegations—could conceivably be construed as touching upon Plaintiff's gender, and this Court finds that those allegations are insufficient to state a hostile work environment claim under the NYSHRL. First, none of the alleged incidents are sufficiently severe to create an objectively hostile environment. *See, e.g., Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Brown v. Coach Stores*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that occasional racist remarks by a supervisor, including one directed at plaintiff, did not create a hostile work environment). Nor has Plaintiff alleged that the acts were "sufficiently continuous and concerted … to be deemed pervasive." *Alfano*, 294 F.3d at 374. Even when all of Plaintiff's allegations are viewed as a whole, they fall significantly short of the type of conduct that courts have found "sufficiently severe or pervasive to alter the conditions of the

victim's employment" for purposes of stating a claim under the NYSHRL. *See id.* at 373, 379–80; *Mendez–Nouel v. Gucci Am., Inc.*, No. 10-cv-3388 (PAE), 2012 WL 5451189, at \*9–11 (S.D.N.Y. Nov. 8, 2012) ("The episodes [plaintiff] complains of are simply too episodic, insufficiently serious, and, most important, insufficiently tied to his gender or sexual orientation, to have materially altered the conditions of [plaintiff's] employment on the basis of any protected classification."), *aff'd*, 542 Fed.Appx. 12 (2d Cir. 2013); *LaSalle v. City of New York*, No. 13-cv-5109 (PAC), 2015 WL 1442376, at \*1, \*7 (S.D.N.Y. Mar. 30, 2015) (granting a motion to dismiss a hostile work environment claim where plaintiff alleged that supervisors "habitual[ly]" called her a "bitch" and used other derogatory and sexist names towards her).

■ Under the more lenient NYCHRL standard, however, Plaintiff's allegations are sufficient—though just barely—to plausibly state a claim for hostile work environment. Although Plaintiff does not explicitly allege that she was treated less well than other employees, she does assert that Rubenstein demanded that she serve subpoenas and deliver documents under dangerous conditions, but that he did not ask a male employee who also worked in an assistant capacity—his son—to carry out similar tasks. (TAC ¶ 425.) This allegation, coupled with Rubenstein's alleged remarks about Plaintiff's appearance and using her femininity to successfully carry out certain job responsibilities, creates a minimal inference that Plaintiff was subject to differential treatment on the basis of her gender. *See Williams v. Rosenblatt Secs. Inc.*, No. 14-cv-4390 (JGK), 2016 WL 4120654, at \*4 (S.D.N.Y. July 22, 2016). To be sure, discovery may reveal that Plaintiff's allegations ultimately amount to "trivial inconveniences" that are not actionable under the NYCHRL; but, at the pleading stage, the Court cannot conclude that

Plaintiff has failed to state a claim as a matter of law.

Accordingly, this Court recommends that Plaintiff's request to add a hostile work environment claim under the NYSHRL against Rubenstein be denied. This Court grants Plaintiff's motion to amend the Complaint to assert a hostile work environment claim in violation of the NYCHRL against Rubenstein.

### 2. *Plaintiff's Hostile Work Environment Claims Against Radwan*

■ Plaintiff's hostile work environment claims against Radwan are premised on allegations that Radwan: (i) grabbed Plaintiff's cellphone out of Plaintiff's hand and caused a scene in court (TAC ¶¶ 335–42); (ii) yelled for Plaintiff when she wanted her attention (TAC ¶¶ 353–55); (iii) "aggressively invaded Plaintiff's personal space" and insisted that they talk about a will signing that Plaintiff had witnessed (TAC ¶¶ 358–68); (iv) reworded Plaintiff's description of a testator's state of mind as part of a note to file (TAC ¶¶ 386–87); and (v) got upset with Plaintiff or acted rudely towards her at various times.

These allegations are insufficient to plausibly state a claim for hostile work environment under the NYSHRL because Plaintiff fails to tie these actions to her gender or any other protected characteristic. The TAC does not set forth any basis upon which it even could be inferred that Radwan's conduct was motivated by a discriminatory animus. *See Feliciano v. City of New York*, No. 14-cv-6751 (PAE), 2015 WL 4393163, at \*14 (S.D.N.Y. July 15, 2015); *Carter v. Verizon*, No. 13-cv-7579 (KPF), 2015 WL 247344, at \*10–12 (S.D.N.Y. Jan. 20, 2015). At best, Plaintiff's allegations express her frustrations and annoyances with Radwan as a supervisor, but such grievances do not give rise to an actionable claim. *See Alfano*, 294 F.3d at

377 ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals."). Moreover, even if Plaintiff had adduced evidence of a discriminatory motive, the complained-of conduct would nevertheless fail to meet the requisite level of "pervasiveness, ridicule, or intimidation necessary to create a hostile work environment" under the NYSHRL. *Feliciano*, 2015 WL 4393163, at *14 (quoting *Mendez–Nouel*, 2012 WL 5451189, at *10); *see also Littlejohn*, 795 F.3d at 321 (allegations that a supervisor made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, and wrongfully reprimanded plaintiff, *inter alia*, did not state a claim for hostile work environment).

For the same reason, Plaintiff has failed to plead a colorable claim for hostile work environment under the NYCHRL against Radwan. While the NYCHRL is more lenient than its state law counterpart, it "is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013) (internal citations omitted); *see also Feliciano*, 2015 WL 4393163, at *14; *Williams*, 872 N.Y.S.2d at 39–40 (core issue in NYCHRL discrimination claims is whether a plaintiff has been treated differently based on a protected characteristic). Plaintiff's complaints that Radwan was overbearing and rude towards her are, at most, "petty slights and trivial inconveniences" that cannot create a hostile work environment, particularly when there is no evidence of a discriminatory motive. *Miha-*

*lik*, 715 F.3d at 110–11. Accordingly, the Court recommends that Plaintiff's request to add hostile work environment claims against Radwan be denied.

### C. Retaliation Under The NYSHRL And NYCHRL Against Both Defendants

Plaintiff appears to allege in the TAC that Defendants retaliated against her in violation of the NYSHRL and NYCHRL. To state a prima facie retaliation claim under the NYSHRL, Plaintiff must show: "[i] participation in a protected activity known to the defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp.2d 392, 413 (S.D.N.Y. 2012). The elements of a prima facie retaliation claim under the NYCHRL differ only in that a plaintiff need not prove any adverse employment action. Instead, Plaintiff must prove that something happened that would be reasonably likely to deter a person from engaging in a protected activity. *Mayers v. Emigrant·Bancorp, Inc.*, 796 F.Supp.2d 434, 446 (S.D.N.Y. 2011); *Feliciano*, 2015 WL 4393163, at *8.

Under both the NYSHRL and NYCHRL, "protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 367 (S.D.N.Y. 2016) (internal quotation marks omitted); *see also Mayers*, 796 F.Supp.2d at 448. "An employee engages in a protected activity when [she] complains of an employment practice that [she] reasonably believes violates the law." *Fernandez*, 159 F.Supp.3d at 367. If it is not readily apparent that the employee is complaining about discrimination, "[t]he onus is on the speaker

to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class and that [she] is not complaining merely of unfair treatment generally." *Mayers*, 796 F.Supp.2d at 448 (citation omitted).

The NYSHRL and NYCHRL also require that a plaintiff "plausibly plead a connection between the act and [her] engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *see also Anderson*, 850 F.Supp.2d at 413 (dismissing claims under NYSHRL and NYCHRL where allegations did not raise any inference of causation). A plaintiff can demonstrate a causal connection "(a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *LaSalle*, 2015 WL 1442376, at *6 (internal citation omitted).

■■■■ The TAC is unclear as to what Plaintiff's protected activity was. The TAC alleges that Defendants retaliated against her after she complained to Radwan, Hoffman, and other occupants of the office suite about the unsanitary conditions of Rubenstein's office, which she claims compromised her health and safety. (TAC ¶¶ 444, 449.) Plaintiff also appears to allege that she complained to Rubenstein that the "toxic hoarding environment with the constant dead mouse smell" negatively affected her health and already-compromised immune system. (TAC ¶¶ 142–44.) But, "in order for a complaint to form the basis of a retaliation claim ... the employer must have understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by the employment discrimination laws." *Mayers*, 796 F.Supp.2d at 448 (internal quotations and citation omitted). Plaintiff's complaints about mess and odors in the office, without more, are insufficient to put Defendants on notice that she was complaining about conduct prohibited by the anti-discrimination laws.[3] *See id.* (collecting cases).

Even assuming, *arguendo*, that Plaintiff's complaints constitute protected activity, the TAC does not assert facts to establish a causal connection between her protected activity and any negative consequence. Plaintiff has not alleged any direct evidence of a retaliatory motive, nor has she recited any facts that would support an inference causation, such as by showing a close temporal proximity between the protected activity and Plaintiff's eventual termination. *See Feliciano*, 2015 WL 4393163, at *9. In fact, the TAC is silent as to when Plaintiff complained about the unsanitary office environment or how many times she complained. *See id.* (holding that it is "impossible for the Court to determine the temporal proximity of the

**3.** To the extent Plaintiff's complaints about office sanitation are construed as requests for a reasonable accommodation for her compromised immune system, Plaintiff still has not stated a claim for retaliation because "a retaliation claim cannot be based on the same conduct that comprises a failure-to-accommodate claim." *Scott–Robinson v. City of New York*, No. 15-cv-9703 (NRB), 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016). Moreover, to the extent Plaintiff intends to state a claim for unsafe working conditions under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 *et seq.*, OSHA does not provide for a private right of action for employees in federal court. *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, No. 12-cv-7460 (JPO), 2013 WL 4565037, at *7–8 (S.D.N.Y. Aug. 28, 2013) (collecting cases); *see also Jones v. Staten Island Univ. Hosp.*, No. 04-cv-3302 (JG), 2006 WL 2713987, at *1–2 (E.D.N.Y. Sept. 22, 2006) ("neither an OSHA violation nor retaliation against an employee for complaining of such a violation will support a cause of action under OSHA by the affected employee.").

alleged retaliatory acts to the protected conduct" when the plaintiff fails to allege dates). Aside from Plaintiff's assertion that Defendants retaliated against her for complaining about perceived health hazards—which is too conclusory to be considered—there is nothing in the TAC that links her protected activity to any negative consequences. Thus, Plaintiff has failed to plead facts to support an inference of causation, a requisite element to a retaliation claim under both the NYSHRL and NYCHRL. *See Taylor v. City of New York*, 207 F.Supp.3d 293, 308–09 (S.D.N.Y. 2016) (explaining that even under the broader NYCHRL retaliation provision, a "plaintiff must still plead some facts that her employers' actions disadvantaged her and that the action was connected to her protected activity.") As a result, this Court recommends denying Plaintiff's motion for leave to amend to add claims for retaliation in violation of the NYSHRL and NYCHRL.

### D. Disability Discrimination Under The NYSHRL And NYCHRL Against Radwan

When broadly construed, the TAC arguably asserts a disability discrimination claim against Radwan for failure to accommodate Plaintiff's disabilities. To establish a prima facie failure to accommodate claim under the NYCHRL and NYCHRL, a plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of [the relevant statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Nieblas–Love v. N.Y.C. Hous. Auth.*, 165 F.Supp.3d 51, 73 (S.D.N.Y. 2016). An employer is required to engage in an interactive process upon notice of the need for an accommodation. *Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 451, 949 N.Y.S.2d 345 (1st Dep't 2012).

The only allegations Plaintiff makes in ostensible support of her failure-to-accommodate claim against Radwan are that: (i) Radwan was aware of Plaintiff's disabilities, specifically, "Plaintiff's intolerance to the cold due to autoimmune disease and cancer and that at times Plaintiff became winded and exhausted due to not being able to get enough oxygen due to the severed vocal cord not moving" (TAC ¶ 315); and (ii) Radwan directed Plaintiff "to move [Rubenstein's] heavy files despite Plaintiff's physical limitations and Ms. Radwan [being] more than capable of moving the files herself." (TAC ¶ 355.)

These barebones assertions are insufficient to state a claim for failure to accommodate under the NYSHRL or NYCHRL. First, the TAC is silent as to whether Plaintiff's alleged disabilities affected her ability to move files in the office. In other words, Plaintiff has failed to plead facts establishing that she required a reasonable accommodation due to her disabilities in order to carry out the requested task. Additionally, while the TAC states that Radwan was generally aware that Plaintiff suffered from certain medical conditions, Plaintiff does not allege that she ever asked Radwan for a disability accommodation or that Radwan otherwise knew Plaintiff's disabilities necessitated an accommodation in order for Plaintiff to move files. *See MacEntee v. IBM*, 783 F.Supp.2d 434, 443 (S.D.N.Y. 2011) (it is "the employee's responsibility to demonstrate to an employer that she needs an accommodation for reasons related to a medical condition disability"). Furthermore, the TAC also does not allege that Radwan ever denied Plaintiff a reasonable accommodation. *See Graham v. Macy's Inc.*, No. 14-cv-3192 (PAE), 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (granting motion to dismiss

failure to accommodate claims where the "[c]omplaint does not identify when, if ever, Graham notified Macy's of her disability. Similarly, it does not allege that Graham asked Macy's for accommodations, or that Macy's refused her request."); *MacEntee*, 783 F.Supp.2d at 444 ("Defendants cannot be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations"). Accordingly, this Court recommends that Plaintiff's request to amend her Complaint to add a claim for disability discrimination against Radwan be denied.

### E. Retaliation Under The FLSA And NYLL Against Both Defendants

Plaintiff next seeks to amend the Complaint to assert a claim for retaliation in violation of the FLSA and NYLL. The FLSA prohibits employers from discharging or otherwise discriminating against any employee "because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). The NYLL similarly provides that an employer shall not discharge, threaten, penalize or otherwise discriminate against an employee because she "has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL. N.Y. LAB. L. § 215(a)(1). Thus, to state a retaliation claim under the FLSA and NYLL, a plaintiff must plead: "(1) participation in protected activity known to the defendant . . .; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 472 (S.D.N.Y. 2013).

"[A] causal connection between an adverse action and a plaintiff's protected ac-

tivity may be established" in either of two ways: " 'by showing that the protected activity was closely followed in time by the adverse action,' " *Mullins*, 626 F.3d at 53 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)), or " 'through evidence of retaliatory animus directed against a plaintiff by the defendant.' " *Id.* (quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). "When a plaintiff is relying solely on temporal proximity, the protected activity and an adverse employment action must occur 'very close' to each other." *Beachum v. AWISCO N.Y.*, 785 F.Supp.2d 84, 98 (S.D.N.Y. 2011) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). "[C]ourts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Id.* (internal quotations and citation omitted).

Plaintiff alleges that she complained to Rubenstein, Radwan, and other tenants of the office suite about her wage claims, including that she was not paid minimum wage or overtime. (TAC ¶ 444; *see also* TAC ¶¶ 312–14, 328, 360.) Plaintiff also alleges that she complained to Rubenstein regarding his failure to pay her wages in a timely manner and about the uncompensated work she was performing for Radwan. (TAC ¶¶ 128, 185, 382.) These internal complaints about her wage claims are sufficient to establish that Plaintiff engaged in protected activity. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115–16 (2d Cir. 2015); *Laboy v. Office Equipment & Supply Corp.*, No. 15-cv-3321 (RA) (AJP), 2016 WL 5462976, at *7 (S.D.N.Y. Sept. 29, 2016).

In support of the second element of a retaliation claim—an adverse employ-

ment action—Plaintiff alleges that Rubenstein terminated her employment as a result of her protected activity, improperly withheld her pay at various points during her employment, and failed to reimburse her for office expenses she incurred on her last day of employment. (TAC ¶¶ 128, 185, 249, 452, 444.) Termination and the withholding of wages are adverse acts for purposes of stating a retaliation claim against Rubenstein. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (defining adverse employment action to include "termination of employment"); *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223–24 (2d Cir. 2001) (holding that the loss of use of wages for a period of time is an adverse action). However, Plaintiff's retaliation claim against Radwan fails because the TAC does not allege that Radwan played any role in either alleged adverse employment action or that Radwan took any other cognizable adverse action against her.[4] *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) ("individual liability under the FLSA is premised upon personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act") (internal quotations omitted).

■■■ Plaintiff's claim also falters as to the third element of her retaliation claim because Plaintiff has failed to plead any facts plausibly supporting a causal nexus between her complaints about pay and the adverse employment actions she identifies.

First, Plaintiff does not identify any direct evidence of a retaliatory motive on the part of Radwan or Rubenstein. While the TAC summarily asserts that Plaintiff believes she was terminated because she objected to Defendants' pay practices, it is silent as to any factual underpinnings which would substantiate this belief. On the contrary, the TAC states that Rubenstein terminated her employment after she and Rubenstein had an argument about damage done to Plaintiff's laptop. (TAC ¶¶ 214–23.) According to Plaintiff, during this dispute, Rubenstein told her that he did not want her to continue working for him because he "no longer trusted Plaintiff" and he blamed her for causing him to become a third-party defendant in a legal malpractice action. (TAC ¶¶ 219, 447.) These stated reasons for firing Plaintiff have nothing to do with Plaintiff's wage complaints.

Plaintiff also cannot demonstrate an inference of retaliation by relying on the temporal proximity between her protected activity and the alleged adverse employment actions because the TAC does not specify when Plaintiff engaged in the alleged protected activity. Based on Plaintiff's vague allegations that she complained about alleged wage violations at some unspecified time during her two-year employment, this Court cannot plausibly conclude that the protected activity was followed closely in time by an adverse act. *See Wang v. Palmisano*, 51 F.Supp.3d 521, 540–41 (S.D.N.Y. 2014) (collecting cases);

---

4. Plaintiff also suggests that Radwan's filings in this case were retaliatory and that Rubenstein likewise filed a motion to strike in another litigation in which Plaintiff and Rubenstein are parties. (*See* TAC ¶¶ 462, 495.) Defendants' motions, which were filed as part of their defenses in litigations commenced by Plaintiff, do not constitute an adverse action for purposes of stating a retaliation or discrimination claim. *See generally U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677

(2d Cir. 1996) (holding that "reasonable defensive measures" do not constitute an adverse action because "[a]t some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee."); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (noting that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation.").

*see also Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp.3d 396, 412 (S.D.N.Y. 2014) (granting a motion to dismiss where the complaint alleged that the defendants retaliated against the plaintiff "when she complained" and "after she complained," but where it "fail[ed] to state with even a modicum of specificity when the relevant events occurred[,]" rendering the complaint's "conclusory allegations . . . simply too vague in nature and non-specific as to time to serve as a basis for [the plaintiff's] retaliation claims") (alterations and internal quotation marks omitted); *Ward v. Shaddock*, No. 14-cv-7660 (KMK), 2016 WL 4371752, at *13 (S.D.N.Y. Aug. 11, 2016).

For these reasons, the Court recommends that Plaintiff's motion to amend be denied insofar as it seeks to add a retaliation claim under the FLSA and NYLL against Defendants.

### F. Wage Claims Under FLSA And NYLL Against Radwan

The TAC appears to seek recovery against Radwan for seven wage-and-hour claims: unpaid minimum wage; unpaid overtime; unpaid spread-of-hours compensation; recordkeeping violations; failure to provide wage notices; untimely payment of wages; and unpaid vacation, sick, and holiday pay. All of these claims were asserted against Rubenstein in the initial Complaint, but Plaintiff now alleges that Radwan and Rubenstein are both liable for her wage claims because Radwan and Rubenstein jointly employed her. For example, the TAC specifically asserts that Radwan directed Plaintiff to carry out work on behalf of her private practice, such as witnessing wills, delivering documents and

performing other tasks, but Radwan did not compensate her for such work. (*See e.g.*, TAC ¶¶ 310–12, 316, 415.)

#### 1. FLSA Enterprise Coverage

In opposition to Plaintiff's motion to amend, Radwan argues that Plaintiff's proposed FLSA claims against her are futile because Radwan's law practice does not generate enough income to qualify as an "enterprise engaged in commerce" for purposes of triggering coverage under the FLSA. (Doc. No. 27, ¶ 7.) Contrary to Radwan's characterization of the FLSA revenue requirement as "jurisdictional" (Doc. No. 27, ¶ 7), the prevailing view in this Circuit is that the question of whether enterprise coverage applies goes to the merits of an FLSA cause of action and is not jurisdictional. *See, e.g., Li v. Ichiro Sushi, Inc.*, No. 14-cv-10242 (AJN), 2016 WL 1271068, at *6, n.6 (S.D.N.Y. Mar. 29, 2016); *Torralba v. Little India Stores*, No. 14-cv-595 (GWG), 2016 WL 771192, at *3 (S.D.N.Y. Feb. 29, 2016). Accordingly, this Court declines to consider Radwan's representations about the amount of revenue generated by her practice in assessing whether Plaintiff's FLSA claims against Radwan are viable.[5]

#### 2. Minimum Wage Claims Under The FLSA And NYLL

In the TAC, Plaintiff asserts that she was consistently paid below the federal and state minimum wages. The FLSA requires covered employers to pay employees a minimum wage of $7.25 per hour during the relevant time period. 29 U.S.C. § 206(a)(1). The New York State minimum wage ranged from $7.15 to $8.75 per hour

---

5. Under the FLSA and NYLL, the test for determining whether an employee-employer relationship exists—or whether an individual was jointly employed by more than one entity or individual—is a fact-sensitive analysis that considers the totality of the circumstances. *See, e.g., Olvera v. Bareburger Grp. LLC*, 73 F.Supp.3d 201, 204–08 (S.D.N.Y. 2014). Here, Plaintiff had plead sufficient facts to support an inference of joint employment.

during Plaintiff's employment. *See* N.Y. LAB. L. § 652 (1). Plaintiff alleges that she was paid approximately $3.57 per hour in 2013, $4.16 per hour in 2014, and $6.25 per hour in 2015. (TAC ¶¶ 37, 42, 44.) Plaintiff further claims that she did not receive any compensation for the work she performed for Radwan. At the pleading stage, these allegations must be accepted as true and, thus, this Court finds that Plaintiff has stated a claim for unpaid minimum wage against Radwan.

### 3. Overtime Claims Under The FLSA And NYLL

Under both the NYLL and FLSA, employers are required to compensate employees for overtime work—that is, work in excess of 40 hours per week—"at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. § 207; *see also* NYCRR § 142-2.2; *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89, n.5 (2d Cir. 2013) ("In light of the fact that the relevant portions of New York Labor Law do not diverge from the requirements of the FLSA, our conclusions below about the FLSA allegations apply equally to the NYLL state law claims.").

"'[I]n order to state a plausible overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," which would then entitle the employee to time-and-a-half for excess hours over forty in a particular week. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1).) "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). The Second Circuit has addressed the degree of specificity needed

to state an overtime claim under the FLSA and NYLL in three recent opinions.

In *Lundy v. Catholic Health Systems of Long Island Inc.*, the Second Circuit held that a plaintiff must do more than merely plead that she worked "occasional" overtime to state a claim. 711 F.3d at 114-15. Because the plaintiffs had "not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours," they failed to state a claim. *Id.* at 114.

Next, in *Nakahata v. N.Y. Presbyterian Healthcare Systems, Inc.*, the Second Circuit similarly affirmed a dismissal of FLSA and NYLL overtime claims where plaintiffs had pled that they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours." 723 F.3d at 199, 201. Applying *Lundy*, the Court held that "plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 201.

Finally, in *Dejesus v. HF Management Services, LLC*, the Second Circuit affirmed the dismissal of plaintiff's overtime claims, finding that complaint was "devoid of any numbers to consider beyond those plucked from the statute." 726 F.3d at 89. In that case, the plaintiff alleged that she worked "more than forty hours per week during 'some or all weeks' of her employment." *Id.* at 87. As the district court noted in its decision, because plaintiff failed "to set forth the precise position she held, any approximation of the number of unpaid overtime hours worked, her rate of pay, or any approximation of the amount of wages due," she failed to state a cognizable claim for overtime. *Id.* at 87 (citations omitted). In its affirmance, the Second Circuit articulated that plaintiffs need not "keep careful records and plead their hours with

mathematical precision," but held that they nevertheless must use their "memory and experience" to provide the court with "sufficiently developed factual allegations." *Id.* at 90.

Whether Plaintiff states a plausible overtime claim under the *Lundy*, *Nakahata*, and *Dejesus* trilogy is a close call, but this Court ultimately finds that Plaintiff has presented sufficient facts to support her claims. The TAC sets forth details about Plaintiff's position and her hourly rates of pay. It also provides facts regarding Plaintiff's work responsibilities for both Defendants, including allegations about instances when Plaintiff was required to work late in the evening (TAC ¶ 191, 405, 421) and on weekends (TAC ¶¶ 102, 104, 122, 169, 174–75). Plaintiff also asserts that she was denied overtime compensation even though, at various points in her employment, she worked between 6 and 7 days per week, 10– to 14–hour days, and/or 60 hours per week. (*See, e.g.*, TAC ¶¶ 42, 96, 132.) Although Plaintiff fails to identify any single specific week in which she worked more than 40 hours and was denied overtime compensation, the TAC recites a rough estimate of the wages Plaintiff claims to have earned during her employment with Defendants. Specifically, Plaintiff alleges that she was told she would be paid $17.50 per hour (TAC ¶ 37), meaning that her overtime rate for hours worked in excess of 40 in a week would be $26.25. The TAC further alleges that, based on the number of hours Plaintiff worked, she earned $78,890, but was only paid $20,600. (TAC ¶¶ 71, 73.) Based on Plaintiff's estimate of her earnings, her hourly rates, her dates of employment, and her allegation that she only took one week off during the course of her employment, this Court is able to calculate that Plaintiff claims to have worked an average of approximately 42.5 hours per week. Thus, accepting Plaintiff's allegations as true, the facts alleged in the TAC are sufficient to "support a reasonable inference that [Plaintiff] worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201; *see also Lundy*, 711 F.3d at 114, n.7 (an approximation of overtime hours "may help draw a plaintiff's claim closer to plausibility."). Accordingly, this Court grants Plaintiff's motion to amend insofar as it adds a claim for unpaid overtime compensation against Radwan.

### 4. Spread of Hours Claim Under The NYLL

Under the NYLL, eligible employees are entitled to spread-of-hours compensation, meaning "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required" for any shift "in which the spread of hours exceeds 10 hours." NYCRR § 142–2.4. The "spread of hours" refers to "the interval between the beginning and end of an employee's workday." NYCRR § 142–2.18. In other words, employers must pay employees for an extra hour of pay at the regular minimum wage for each day that employees work more than ten hours. *Azeez v. Ramaiah*, No. 14-cv-5623 (PAE), 2015 WL 1637871, at *4 (S.D.N.Y. Apr. 9, 2015).

Here, Plaintiff alleges that she: (i) earned less than the statutory minimum wage (TAC ¶¶ 37, 42, 44); (ii) worked more than 10 hours per day at various times during her employment (TAC ¶¶ 83, 96, 132); and (iii) she did not receive spread-of-hours pay. (TAC ¶¶ 38, 236.) While these factual assertions are sparse, this Court cannot say that Plaintiff has failed to state a claim for unpaid spread-of-hours compensation as a matter of law and, thus, this Court will allow Plaintiff to advance a claim for unpaid spread-of-hours-compensation against Radwan. *See Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F.Supp.3d 489, 498–500 (S.D.N.Y. 2016).

### 5. Recordkeeping Violations Under the FLSA

The TAC also alleges that Defendants violated the FLSA by failing to maintain records regarding her employment. (TAC ¶ 47.) The FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). 29 U.S.C. § 215 makes it "unlawful" to violate this record-keeping provision of the FLSA. 29 U.S.C. § 215(a)(5). Nevertheless, courts "have repeatedly found that the FLSA does not authorize employees to bring a private action against an employer for failure to abide by the record-keeping requirements of Section 211(c)." *Ayala v. Looks Great Servs., Inc.*, No. 14-cv-6035 (ADS) (SIL), 2015 WL 4509133, at *6 (E.D.N.Y. July 23, 2015) (collecting cases); *Klein v. City of New York*, No. 10-cv-9568 (PAE) (JLC), 2011 WL 5248169, at *2, n.1 (S.D.N.Y. Oct. 28, 2011). This Court accordingly recommends that Plaintiff's motion to amend to add a claim against Radwan for FLSA recordkeeping violations be denied with prejudice.

### 6. Wage Notice Claims Under The NYLL

Under the NYLL, "[e]very employer" is required to provide each employee "at the time of hire" with written notice that includes her rate of pay, the basis for that pay rate, the regular pay day designated by the employer, and other related information. N.Y. LAB. L. § 195(1)(a). Employers also are required to provide notice "with every payment of wages" that includes the dates of work covered by that payment, rates of pay, and deductions, among other information. N.Y. LAB. L. § 195(3). Additionally, employers must provide written notice to any terminated employee of her exact date of termination within five days of such termination. N.Y. LAB. L. § 195(6).

▮ The TAC alleges that Plaintiff was not given written wage notices upon hire or at any other time during her employment. (TAC ¶¶ 58–61, 64, 271.) Plaintiff also alleges that she was not given notice of her date of termination. (TAC ¶ 247.) While Plaintiff's allegations suggest that she believed Rubenstein was responsible for disseminating the notice, not Radwan, Plaintiff's allegations that Radwan and Rubenstein operated as her joint employers are sufficient to state a claim for notice violations against Radwan at the pleading stage. *See Mendez v. U.S. Nonwovens Corp.*, 2 F.Supp.3d 442, 457–58 (E.D.N.Y. 2014). Accordingly, this Court grants Plaintiff's request to add a claim against Radwan for NYLL wage notice violations.

### 7. Untimely Payment Of Wages Under The FLSA And NYLL

The TAC also alleges that Defendants failed to pay Plaintiff her wages in a timely fashion. Under the NYLL, employers must pay the wages for clerical and other workers "in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. LAB. L. § 191(1)(d). Following an employee's termination, the employer must pay the employee's owed wages "not later than the regular pay day for the pay period during which the termination occurred." N.Y. LAB. L. § 191(3). While the FLSA does not statutorily prescribe a particular payment schedule, courts have consistently interpreted Section 206(a) of the FLSA to require the prompt payment of wages. *See, e.g., Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F.Supp.3d 336, 353 (S.D.N.Y. 2014); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998) ("it is

clear that the FLSA requires wages to be paid in a timely fashion").

 Here, Plaintiff alleges that she was not paid in a timely manner and that Rubenstein withheld her paychecks on various occasions. (TAC ¶¶ 45, 105, 128, 185–88, 191, 243–44, 408.) She also alleges that, upon her termination on July 31, 2015, Rubenstein dated her paycheck for five days into the future, which precluded her from being able to immediately access her wages. (TAC ¶¶ 105, 243–44.) Accepting Plaintiff's allegations as true, including that Rubenstein and Radwan jointly employed Plaintiff, Defendants' delay in paying Plaintiff her wages, either by failing to issue paychecks or by forward-dating her paychecks, violates the prompt payment requirements of the FLSA and NYLL. *See Belizaire*, 61 F.Supp.3d at 353–54; *Testa v. Carefusion*, No. 14-cv-5202 (JFB) (AKT), 2016 WL 4099113, at *6 (E.D.N.Y. Aug. 2, 2016) (allegations that Plaintiff was owed commissions that were not paid upon his termination was sufficient to state a claim under NYLL § 191(3)).[6] Therefore, this Court grants Plaintiff's motion to amend the Complaint to add a claim for untimely wage payments against Radwan.

### 8. *Unpaid Vacation Time, Sick Time, And Holiday Pay*

Plaintiff also appears to seek recovery for unpaid vacation time, sick time, and federal holiday pay against Radwan. Neither the FLSA nor the NYLL require an employer to provide paid vacation, sick leave or holiday pay. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F.Supp.2d 457,

475–76 (E.D.N.Y. 2011) ("It is axiomatic that an employee has no inherent right to paid vacation and sick days, or payment for unused vacation and sick days, in the absence of an agreement, either express or implied."); *see also* N.Y. DEP'T OF LAB., *Wage and Hours: Frequently Asked Questions*, available at: https://labor.ny.gov/workerprotection/laborstandards/faq.shtm#9; U.S. DEP'T OF LAB., *Holiday Pay*, available at: https://www.dol.gov/general/topic/wages/holiday. Further, Plaintiff has not alleged any facts to suggest that she is otherwise entitled to such compensation. *See Crawford v. Coram Fire Dist.*, No. 12-cv-3850, 2015 WL 10044273, at *5–6 (E.D.N.Y. May 4, 2015). Accordingly, insofar as the TAC seeks to add a cause of action for unpaid vacation time, sick days or holidays, this Court recommends that amendment be denied as futile.

### G. Intentional Infliction Of Emotional Distress Against Both Defendants

 The TAC also purports to assert a claim for intentional infliction of emotional distress, which is premised upon allegations that Defendants mistreated Plaintiff in various ways during the course of her employment.

 In New York, claims for intentional infliction of emotional distress are subject to a one-year statute of limitations. *See, e.g., Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) ("In New York, an IIED claim must be brought within one year of the injury."). Plaintiff's employment with

---

**6.** To the extent that Plaintiff's claim for untimely payment of wages is premised upon her allegation that she was not compensated for the work she performed for Radwan, such a claim is only actionable as a claim for unpaid minimum wage and overtime compensation, and cannot be recast as a duplicative claim for untimely payment of wages. *See, e.g., Kone v. Joy Construction Corp.*, No. 15-cv-

1328 (LTS), 2016 WL 866349, at *4 (S.D.N.Y. Mar. 3, 2016) (holding that NYLL § 191 is an "an inappropriate vehicle for .... recovery where the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive") (internal citations omitted); *Myers v. Hertz Corp.*, 624 F.3d 537, 545–46 (2d Cir. 2010).

Defendants ceased on July 31, 2015. (TAC ¶ 243.) However, Plaintiff did not commence this action until October 13, 2016, which is more than a year after her employment-related emotional distress claims could have arisen. Thus, Plaintiff's claims for intentional infliction of emotional distress are barred by the statute of limitations. This Court accordingly recommends that Plaintiff's motion to amend be denied insofar as Plaintiff seeks to add claims for intentional infliction of emotional distress against Defendants.

## H. Fraud Against Radwan

█ The TAC also appears to advance a state law fraud claim against Radwan. To state a claim for fraud, a plaintiff must plead facts showing that: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied on the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *Mumin v. Uber Techs., Inc.*, 239 F.Supp.3d 507, 540 (E.D.N.Y. 2017) (internal citations omitted).

█ Here, Plaintiff does not allege that Radwan made any false statements to Plaintiff directly. Instead, Plaintiff alleges that Defendants committed fraud on the government when they failed to properly classify Plaintiff as an employee, which further resulted in Plaintiff being deprived of workers' compensation, disability and unemployment benefits that she otherwise would have been entitled to receive. (TAC ¶¶ 484–85.) The fraud claim fails as a matter of law because a plaintiff cannot "establish the reliance element of a fraud claim under New York law by showing that a third party relied on the defendant's false statements." *Pasternack v. Lab. Corp. of Am. Holdings*, 839 F.3d 151, 152 (2d Cir. 2016) (citing *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817,

828–29, 37 N.Y.S.3d 750, 59 N.E.3d 485 (2016)).

Even if Plaintiff were able to proceed based on third-party reliance, Plaintiff still must satisfy the heightened pleading standard for fraud claims pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 462 (S.D.N.Y. 2009) (quoting *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)) (internal quotation marks and citation omitted). Plaintiff's conclusory allegations that Radwan failed to correctly report Plaintiff's employment status to various government agencies falls significantly short of meeting the standard for pleading a cognizable fraud claim. Accordingly, this Court recommends that Plaintiff's request to add a claim for fraud against Radwan be denied.

## I. Tortious Inference Against Rubenstein

█ The TAC also seeks to add a new claim of tortious interference with contract against Rubenstein. "The elements of a claim for tortious interference with a contract under New York law are the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P.*, 662 Fed.Appx. 33, 36 (2d Cir. 2016) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668

N.E.2d 1370 (1996)) (internal quotations omitted).

■ Plaintiff accuses Rubenstein of interfering with her relationships with two attorneys who were representing her in different matters. She first claims that Rubenstein approached Hoffman, who worked in Rubenstein's office suite and who also was representing Plaintiff in a malpractice action, for advice about defending against Plaintiff's threatened wage claims. (TAC ¶ 453.) According to Plaintiff, Hoffman subsequently told Plaintiff that he could not vigorously represent her because of the tension created by Rubenstein approaching him in the office. (TAC ¶ 454.) Plaintiff further alleges another unspecified attorney filed a motion to withdraw as Plaintiff's counsel in a legal malpractice action after Rubenstein's counsel told Plaintiff's counsel that Plaintiff was untrustworthy and might bring a malpractice claim against him. (TAC ¶ 460.)

These vague allegations appear to be little more than mere suspicions that are inadequate to support a claim for tortious interference. *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000). Plaintiff does not specifically allege a contract between her and either attorney, nor does she allege that the attorneys' withdrawals amounted to an unjustifiable breach of said contacts. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (claim for tortious interference requires that plaintiff an actual breach of the contract). Moreover, Plaintiff has failed to state a claim for tortious interference because she does not allege that she suffered damages as a result of either severed attorney-client relationship. The Court accordingly recommends that Plaintiff's request to add a cause of action for tortious interference against Rubenstein be denied.

## III. REQUESTS TO STRIKE

There are also two requests to strike portions of the record pending before this Court—(1) Plaintiff's motion to strike all of Radwan's filings, and (2) Radwan's request to strike certain embarrassing and harassing portions of Plaintiff's proposed amended pleadings.

Beginning first with Plaintiff's request, Plaintiff summarily asserts that Radwan's affirmation in opposition to Plaintiff's motion to amend and other filings are improper and unauthorized and, as such, should be stricken from the record. As a threshold matter, Rule 12(f) only pertains to the striking of pleadings, not to motion papers or other submissions. *See Katz v. Mogus*, No. 07-cv-8314 (PKC) (KNF), 2009 WL 5173789, at *2 (S.D.N.Y. Dec. 30, 2009). Plaintiff's motion to strike must be denied for this reason. Additionally, Plaintiff's argument that Radwan should not be permitted to file documents through the Pro Se Intake Unit is also misguided. Any party who is appearing without counsel in an action is permitted to file papers with the Pro Se Intake Unit. Accordingly, Plaintiff's motion to strike is denied.

Radwan asks the Court to strike certain allegations that are personal, embarrassing, inflammatory and irrelevant from any amended pleading. Radwan provided the Court with a redacted version of the Proposed Amended Complaint, which conceals the allegations that she deemed to be improper. The Court declines to adopt Radwan's proposed redactions as a whole, however, because some of the requested redactions encompass allegations that are at least tangentially related to Plaintiff's claims in this litigation. *See Schoolcraft*, 299 F.R.D. at 67 (it is "not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action").

Nevertheless, this Court agrees that some of the allegations in the TAC are plainly irrelevant and serve no purpose other than to reveal embarrassing and personal information about Defendants and non-parties. Additionally, some allegations in the TAC concern Defendants' clients and could possibly be construed as revealing personal and/or privileged information about such client relationships. For these reasons, this Court strikes certain irrelevant allegations from the TAC, as reflected in the redacted version of the TAC annexed to this decision. The Clerk of Court is hereby directed to file the annexed redacted TAC as the amended pleading in this matter.

## IV. LEAVE TO AMEND

In accordance with the special solicitude afforded to pro se litigants, this Court recommends that Plaintiff be given the opportunity to further amend the TAC to correct the pleading deficiencies in the claims that this Court has recommended be dismissed. *See Tracy*, 623 F.3d at 101 ("A pro se plaintiff should be afforded an opportunity fairly freely to amend his complaint") (alteration and internal quotation marks omitted); *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (noting that a district court should not dismiss an action without granting leave to amend at least once when the complaint gives "any indication that a valid claim" may be stated) (internal quotation marks omitted). However, to the extent that this Court has recommended that a particular claim be dismissed with prejudice, Plaintiff should not be permitted to seek further amendment as to that claim. *See e.g., MacKinnon v. City of New York/Human Res. Admin.*, 580 Fed.Appx. 44, 45–46 (2d Cir. 2014) (leave to amend need not be granted to pro se when "the problem with his complaint is substantive [and] better pleading will not cure it") (internal quotation omitted); *Campbell v. Rosenblatt*, No. 15-cv-

5169 (JG), 2015 WL 6965186, at *2 (E.D.N.Y. Nov. 10, 2015) ("[The court] need not afford [opportunity to amend] here where it is clear from plaintiff's submission that she cannot establish a basis for this Court's subject matter jurisdiction and thus any attempt to amend the complaint would be futile.").

In deciding whether to seek leave to file a Fourth Amended Complaint, Plaintiff should be mindful of the deficiencies in her claims, as identified above. To the extent that Plaintiff opts to file an amended pleading, she must ensure that the allegations stricken by the Court in the TAC do not appear in the Fourth Amended Complaint. This Court recommends that Plaintiff be required to seek leave to file a Fourth Amended Complaint, if any, within 30 days and that her failure to do so will preclude her from seeking leave to replead the claims found to be futile by this Court at a later time.

Further, before seeking leave to file a Fourth Amended Complaint, Plaintiff is strongly encouraged to consult a new legal clinic opened in this District to assist people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court. The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL–22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed. A party without legal representation can make an appointment in person or by calling 212–659–6190.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for leave to amend (Doc. No. 33) be

denied in part as to the following causes of action: (i) discrimination in violation of Title VII against Defendants; (ii) discrimination in violation of the ADA against Radwan; (iii) hostile work environment in violation of the NYSHRL against Rubenstein; (iv) hostile work environment in violation of the NYSHRL and NYCHRL against Radwan; (v) retaliation in violation of the NYSHRL and NYCHRL against Defendants; (vi) disability discrimination in violation of the NYSHRL and NYCHRL against Radwan; (vii) retaliation in violation of the FLSA and NYLL against Defendants; (viii) FLSA record-keeping violations against Radwan; (ix) unpaid vacation, sick, or holiday pay against Radwan; (x) intentional infliction of emotional distress against Defendants; (xi) fraud against Radwan; and (xii) tortious interference against Rubenstein.

This Court grants Plaintiff's motion for leave to amend (Doc. No. 33) with respect to the following claims: (i) hostile work environment in violation of the NYCHRL against Rubenstein; (ii) unpaid minimum wage against Radwan; (iii) unpaid overtime against Radwan; (iv) unpaid spread-of-hours compensation against Radwan; (v) failure to provide wage notices against Radwan; and (vi) untimely payment of wages against Radwan. The Court further denies Plaintiff's motion to strike (Doc. No. 33), and grants Radwan's request to strike in part, as set forth above.

The Clerk of Court is also directed to terminate Plaintiff's motion for leave to amend pending as Doc. No. 20 as moot.

**SO ORDERED.**

Date: May 23, 2017